UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARLEE ANN CAMPBELL,

    Plaintiff,

v.                                    CASE NO. 08-CV-10843

COMMISSIONER OF                DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 10.)

Plaintiff was 22 years of age at the time she alleges she became unable to work. (Transcript, Dkt. 7 at 24.) Plaintiff's relevant employment history included brief periods of work at McDonald's restaurants, work at a K-Mart store, and slightly over one year of work at a Kroger grocery store. (Tr. at 68, 94.)

Plaintiff filed the instant claims on March 3, 2004, alleging that she became unable to work on July 3, 2003. (Tr. at 57-59, 367-68.) The claims were denied at the initial administrative stages. (Tr. at 42, 373.) In denying Plaintiff's claims, the Defendant Commissioner considered Prader-Willi Syndrome[2] and borderline intellectual functioning as possible bases of disability. (*Id.*)

On May 7, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Peter Dowd, who considered the case *de novo*. In a decision dated September 7, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 16-26.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004); on December 26, 2007, when, after the review

---

[2]Prader-Willi Syndrome is a congenital disorder characterized by short stature, extreme obesity, mental retardation and the failure to develop secondary sexual characteristics. 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE P-393.

of additional exhibits[3] (Tr. at 375-79), the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On February 29, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

B.     **Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

---

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,*

4

486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party'"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past

relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in April 1990, when Plaintiff was in the fourth grade, a school psychologist recommended that she be given a classification of "Educable Mental Impairment." (Tr. at 103-04.) IQ testing revealed a verbal IQ of 60, a performance IQ of 61, and a full scale IQ of 57. (Tr. at 105.)

In early December 1999, when Plaintiff was in the twelfth grade, she underwent psychological testing. The results indicated a verbal IQ of 71, a performance IQ of 73, and a full scale IQ of 70. (Tr. at 223.) She was listed in the fifth percentile in reading comprehension and the fourth percentile in math calculation. (Tr. at 224.) These findings corresponded to a grade level of 4.9 in reading comprehension and 5.5 in math calculation. (*Id.*)

Davidson Community Schools records from 1999 indicate that Plaintiff was in special education classes and had passed all of them, although she had weak reading, writing and math skills. (Tr. at 212-13.) She was also described as "a very responsible student." (*Id.*)

Hurley Medical Center records from October 2003 indicate that Plaintiff was seen for an injury to her right leg and knee after a fall. (Tr. at 255.) X-rays of Plaintiff's knee were normal. (Tr. at 260.)

In early August 2004, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination Service ("DDS") by Karen Marshall. Plaintiff recounted that she got along well with her roommate and her parents. (Tr. at 244.) Ms. Marshall described Plaintiff as "cooperative and friendly." (*Id.*) Plaintiff stated that she enjoyed working on the computer, visiting friends and playing video games. (Tr. at 245.) Plaintiff stated that she could cook simple meals, shop and clean her house. Ms. Marshall stated that Plaintiff "presented with an intact reality and adequate self esteem." (*Id.*) Plaintiff evidenced no hallucinations or thought disorders. Plaintiff's affect was described as "appropriate." (*Id.*) Plaintiff denied long periods of depressed mood. (*Id.*) Ms. Marshall noted Plaintiff's Prader-Willi syndrome, but made no psychological diagnoses, and stated that Plaintiff's "symptoms appear to be related to a medical condition." (Tr. at 246.)

In mid-August 2004, Plaintiff was examined at the request of the DDS by Dr. Bret Bielawski. (Tr. at 236-39.) The doctor noted Plaintiff's previous diagnosis of Prader-Willi syndrome. (Tr. at 236.) Plaintiff stated that she had weighed as much as 310 pounds previously. (*Id.*) Plaintiff recounted injury to her right leg, but stated that she was "able to walk without too much difficulty." (*Id.*) During physical examination, the doctor found no evidence of joint abnormalities. (Tr. at 237.) Plaintiff's grip strength and dexterity were unimpaired. (*Id.*) Plaintiff exhibited no difficulty walking, squatting or hopping. Reach motion was described as "full." (*Id.*) Examination of Plaintiff's right leg was unremarkable except for some mild scarring. (*Id.*) The doctor noted Plaintiff's obesity and stated that she weighed 278 pounds. (Tr. at 239.) The doctor

8

stated that Plaintiff could perform all muscular skeletal tasks, but did appear to be "somewhat restricted because of her weight." (*Id.*) Pulmonary function studies revealed some restriction consistent with her obesity. (*Id.*)

Plaintiff's treating physician noted in April 2005 that Plaintiff had begun working again but was suffering anxiety attacks as well as a skin reaction to plastic gloves required by her work. (Tr. at 116.) X-rays of Plaintiff's cervical spine and left shoulder taken in late May 2005 after complaints of pain in these regions were normal. (Tr. at 150.) In early June 2005, it was reported that Plaintiff was 5'2" tall and weighed 275 pounds; earlier records show that Plaintiff weighed as much as 288 pounds. (Tr. at 112, 130.) Plaintiff's medical records also indicate that in 2006 her blood pressure was under control and she was being treated for diabetes. (Tr. at 164-68.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. at 21.) At step two, the ALJ found that Plaintiff's history of borderline intellectual functioning, Prader-Willi syndrome, obesity, diabetes, hypertension and right leg injury were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22.) At step four, the ALJ found that Plaintiff could not perform her previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 24-25.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 25.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner, arguing primarily that Plaintiff's mental condition meets the Commissioner's mental impairment Listings. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, counsel for Plaintiff argues that the ALJ misapplied Listing 12.05. A claimant must satisfy all the criteria of a Listing to be found to have met or equaled a Listing. *Hale v.*

*Secretary of Health and Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). Listing 12.05, dealing with mental retardation, provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>>
>> 2. Marked difficulties in maintaining social functioning; or
>>
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Commissioner's general provision concerning this mental impairment also states:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). *If your impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, we will find that your impairment meets the listing.* Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added).

Plaintiff must therefore demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder. *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). In other words, not only must Plaintiff provide an IQ score of Listing level severity, but Plaintiff must also provide evidence showing she meets the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05. As recognized by the *Foster* court, "recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . .' 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) as amended by 65 Fed. Reg. 50746, 50776 (August 21, 2000)." *Foster*, 279 F.3d at 354. Thus, for purposes of Listing 12.05C and D, a plaintiff must show (1) she suffers from "significantly subaverage general intellectual functioning," (2) she suffers from "deficits in

adaptive functioning,"[4] (3) such deficits initially manifested during the developmental period (i.e., before age 22), and (4) a valid IQ score between 60 through 70 and an additional physical or other mental impairment imposing an additional and significant work-related limitation of function for Listing 12.05C, or a valid IQ score between 60 through 70 and marked restrictions in mental or social functioning in at least two areas for purposes of Listing 12.05D.[5] *See Foster*, 279 F.3d at 354-55. *See also Daniels v. Commissioner*, 70 Fed. App'x 868, 872 (6th Cir. 2003).

Although Plaintiff's IQ scores are within the ranges set forth in Listing 12.05C, and are during "the developmental period," I cannot find evidence in this record to support the remaining requirements of this listing. Although Plaintiff required special education classes throughout her schooling, in the twelfth grade Plaintiff was described as "a very responsible student." (Tr. at 213.) None of the physicians who either treated or examined Plaintiff recounted any episodes of meaningful emotional instability. The psychologist who examined Plaintiff at the request of the DDS, although noting Plaintiff's Prader–Willi syndrome, nevertheless made no diagnoses of psychological impairments. (Tr. at 246.) Plaintiff recounted to the psychologist that she enjoyed working with the computer, could undertake numerous household activities, and related well to friends, family and her roommate. These facts, I suggest, are inconsistent with a finding of disability under Listing 12.05. *See Cooper v. Commissioner of Soc. Sec.*, 217 Fed. App'x 450, 452

---

[4]"Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., (DSM IV) (2000) at page 42. Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Id*. at 49.

[5]With regard to IQ tests, the Commissioner states:
"[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration uses] the lowest of these in conjunction with 12.05." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c).

(6th Cir. 2007) (holding that diagnoses of borderline intellectual functioning and common activities inconsistent with mental retardation provided substantial evidence that plaintiff did not meet diagnostic description); *Riley v. Apfel*, No. 97-1799, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished) (two diagnoses of low average intelligence substantially supports a determination that plaintiff should not be diagnosed with mental retardation).

As for Plaintiff's obesity, the Commissioner's Listings state that "[t]here is no specific level or weight or [body-mass index] that equates with a 'severe' or 'not severe' impairment," and the ALJ shall "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." S.S.R. 02-01P(6)-(7), 2000 WL 628049, at *4. Absent evidence showing that a plaintiff's weight impaired her ability to do basic work activities, the court may not question the ALJ's finding on this issue. Although in this case Plaintiff injured her leg, there is no evidence on the record to support a finding that this injury, or her obesity, significantly impacted her ability undertake work-related activities.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments of both her treating and examining physicians. (Tr. at 427-29.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ failed to find Plaintiff's complaints of disabling limitations fully credible. He acknowledged that Plaintiff had an impairment that could cause limitations, however, he found that the severe and debilitating nature of Plaintiff's alleged limitations were not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations

are supported by substantial evidence. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at **3 (6th Cir. Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*

*Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ *Charles E. Binder*
                                                  CHARLES E. BINDER
Dated: August 18, 2008                          United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Vanessa Miree Mays, David M. Stewart, and the Commissioner of Social Security, and served on U.S. District Judge Cook in the traditional manner.


Date: August 18, 2008          By    s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder